IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  08-cv-02821-WYD-MJW

ROBERT R. ROGERS,

Plaintiff,

v.

ARISTEDES ZAVARAS, et al.,

Defendants.

---

**RECOMMENDATION ON
PLAINTIFF'S EMERGENCY MOTION FOR PROTECTION FROM DEFENDANTS
(Docket No. 43)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to Magistrate Judge issued by Chief Judge Wiley Y. Daniel on March 30, 2009.  (Docket No. 23).

Now before the court for a report and recommendation is the pro se incarcerated plaintiff's "Emergency Motion for Protection from Defendants" (Docket No. 43) and his Declaration (Docket No. 43-2) and Memorandum of Law (Docket No. 43-3) in support thereof.  Defendants have filed a Response (Docket No. 73).  The court has considered the motion, plaintiff's declaration, memorandum of law, and subsequently-filed documents as well as the defendants' response and has taken judicial notice of the court's file.  In addition, the court has considered applicable Federal Rules of Civil Procedure and case law.  The court now being fully informed makes the following

findings, conclusions, and recommendation.

Plaintiff asserts the following in his motion. On May 11, 2009, the defendants through Smokey Kurtz "raided" plaintiff's cell and confiscated all of his legal papers, mail, orders, and responses from the court in retaliation for litigating this case. Plaintiff is in fear of his life and any other forms of retaliation that they may have planned. Plaintiff begs the court for assistance and help in this matter. Defendants are threatening him with criminal allegations for initiating this case.

Attached to plaintiff's motion is a declaration of plaintiff in support of his motion (Docket No. 43-2) in which he asserts the following:

1. I am the Plaintiff in this case. I make this declaration in support of my motion for a Temporary Restraining Order ["TRO"] and a Preliminary Injunction to insure that I remain safe and free from retaliation.

2. As set forth in the complaint in this case, I was the witness to and the victim of felonious acts committed by Defendant's [sic] Tegan Haack, Tania Garcia, Art Ducharme and Dana Bustos.

3. As set forth in the Complaint in this case I was feloniously inducted then expelled from the Crossroads to Freedom Therapeutic Community Program without due process. I had completed the entire program curriculum then expelled post-completion without credit for achievement. I should be protected from the ramifications and retaliations from non-compliant determinations relating to the program.

4. I am continually subjected to retaliation by DOC Staff for pursuing the protection of my rights and personal safety. I am continually questioned, harassed, belittled by staff and inmates who have been advised of my situation by staff and defendant's [sic], leaving me open to further assaults and risk to my safety and well being. Due to the reckless and careless handling of this situation by DOC staff members.

5. I have been assaulted by staff defendant John Doe #1 and inmates who have claimed to have conspired, in concert with Defendant's

3

>
> [sic] Tegan Haack, Tania Garcia, Art Ducharme and Dana Bustos and/or all of the named Defendant's [sic] as retaliation for my bringing this incident out into the open against their comrades and for filing of this complaint.
>
> 6. On December 18, 2008, I was stabbed in the abdomen and assaulted leaving the prison gymnasium. This attack was unprovoked by the Plaintiff.
>
> 7. The Plaintiff was moved from an appropriate level facility, equal to his custody level and placed into a high security level facility with a high propensity for violence as retaliation. This has also provided for a convenient way to explain away assaults as this is a regular occurrence at the Arkansas Valley Correctional Facility. Plaintiff fears for his life and feels he can no longer be safely housed in a DOC facility due to the claims made against staff members, retaliation and assaults at most any facility he is placed. However, as an inmate with negative one custody level points, no disciplinary incidents during this incarceration period and a model working inmate. He should be placed in a facility equal to his minimum custody rating.
>
> 8. Defendant Aristedes Zavaras is the Executive Director for the Colorado Department of Corrections ("CDOC") and is responsible for my safety and the actions of his staff after being notified of violations of the Administrative Regulations and the laws of the State of Colorado. Forewarned, Defendant Zavaras failed to protect the Plaintiff from harm or further incidents which are eminent.
>
> For the reasons set forth herein and incorporated through the **Memorandum of Law** filed with this Motion, Plaintiff is entitled to a **Temporary Restraining Order** requiring the Defendants to protect him from harassments, assaults, threats, and retaliation by DOC staff and inmates. He is also entitled to a **Preliminary Injunction** which prevents the Defendants from interfering with the Plaintiff's pursuit of this action. Plaintiff should be immediately restored to his position prior to the May 20, 2008 discharge from the T.C. Program removing any negative actions resulting from such and void any sanctions assigned from the erroneous non-compliant T.C. compliance allegation.

(Docket No. 43-2 at 1-2). Attached to plaintiff's declaration is a typewritten document that appears to quote an article that purportedly was published in the Denver Post on

4

February 1, 2009, regarding Janine Sligar, a secretary working for the Federal Bureau of Prisons, who was sentenced to six months in jail for having a four-month sexual affair with an inmate.

Plaintiff subsequently submitted three exhibits in support of this motion, namely, (1) a CDOC Office of the Inspector General Investigations Division Receipt for Property Continuation Report which lists three items, namely, a notebook with handwritten material inside, a typed note from "John" talking about Tania Garcia and a note found in trash at Arrowhead, and a DOC Letterhead letter from CMC Warden Ron Leyba dated 11/06/2008; (2) A Chain of Custody form; and (3) a CDOC Misc. Withdrawal Ticket indicating a $4.00 withdrawal for 16 copies from health records, which contains the hand-written notation: "Proof of plaintiff obtaining copies of his medical and mental health records. Plaintiff states under penalty of perjury that these items are now missing from his records (some)." (Docket No. 54).

In addition, plaintiff subsequently filed a purported affidavit by another inmate, Roger Gross, which states the following:

> In early February while sitting in the chow hall with Robert Rogers, a guy walked up to our table. He asked Robert if his last name was Rogers. Robert told him yes and the guy handed him a letter. I read the letter then and have read it several times since. In my own words the letter said the following:
>
> Hey homie, there is an old buddy that lives over in 5, he use to kick it with Krantz... Rogers. Let him know his old cellie found some stuff in the trash there at Arrowhead in Tania Garcia's office, it has his name all over it. It says some stuff about trying to shut him up and Warden Leyba ordering them to make it go away. It says the original was sent to his home address in Englewood. The letter was signed by John.
>
> To the best of my recolection [sic] this is a correct summary of what the letter states. I was there with Robert and witnessed the letter being

5

handed to him by a fellow inmate.

(Docket No. 90 at 2).

Defendants' arguments in response include the following. The State defendants cannot be liable for the conduct of non-party Smokey Kurtz simply because all, or any one of them, are/is his supervisor. In addition, the mere confiscation of legal papers by prison officials states no grounds for relief. Without alleging more than the claim that Smokey Kurtz is supervised or designated by the State defendants, there is no basis for relief against any defendant notwithstanding Kurtz's actual conduct. Even assuming arguendo that the State defendants are responsible for Kurtz's conduct, plaintiff is not entitled to relief because he has not alleged actual injury. It appears plaintiff is pleading a First Amendment denial of access to the courts claim, but such a claim fails because plaintiff has not alleged any harm caused by the confiscation of legal papers. Furthermore, paragraphs 2 through 4 of the motion (in which plaintiff claims he is in fear of his life and other forms of retaliation, begs the court for assistance, and claims defendants are threatening him with criminal allegations) provide no factual basis for relief.

Because the plaintiff is proceeding without counsel, the court has construed his pleadings liberally. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). The court, however, should not be the *pro se* litigant's advocate, nor should the court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing Hall, 935 F.2d at 1110).

6

"A [TRO] or preliminary injunction is extraordinary relief." Statera, Inc. v. Hendrickson, 2009 WL 2169235, *1 (D. Colo. July 17, 2009). Injunctive relief should be granted only when the moving party clearly and unequivocally demonstrates its necessity. See Schrier v. University of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, the party requesting injunctive relief must establish that: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. Id. "In addition to the foregoing factors, a party seeking a [TRO] also must demonstrate clearly, with specific factual allegations, that immediate and irreparable injury will result absent a [TRO]." Statera, 2009 WL 2169235, *1.

Furthermore, "[b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, . . . [the Tenth Circuit has] identified the following three types of specifically disfavored preliminary injunctions . . . (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits." Schrier, 427 F.3d at 1258-59 (citation and quotations omitted). "Such disfavored injunctions 'must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course.'" Id. at 1259.

This court also "considers well-established law that prison management functions

7

should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. . . .   Courts should grant injunctive relief involving the management of prisons . . . only under exceptional and compelling circumstances." Walker v. Meyer, 2009 WL 1965493, *4 (D. Colo. July 8, 2009) (citations omitted).

It is well established that "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."  Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1260 (10th Cir. 2004) (citations omitted).  "To constitute irreparable harm, an injury must be certain, great, actual, 'and not theoretical.'"  Heideman v. South Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003).  The moving party "must show that 'the injury complained of is of such *imminence* that there is a clear and present need for equitable relief' to prevent irreparable harm."  Id. (citation omitted).  Furthermore, the Tenth Circuit has "held that prison officials may not retaliate against or harass an inmate in retaliation for the inmate's exercise of his constitutional rights. . . .  'This principle applies even where the action taken in retaliation would be otherwise permissible.' . . .  To prevail, [however,] a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive."  Baughman v. Saffle, 24 Fed.Appx. 845, 2001 WL 1241329, *2 (10th Cir. Oct. 17, 2001) (citing Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998); Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990)).

Here, this court finds that the plaintiff has failed to meet the heavy burden

8

required to obtain injunctive relief. He has made no showing that retaliation is "certain great, actual, and not theoretical." The possibility of future retaliation is simply too speculative to justify granting plaintiff's request for injunctive relief. See Sims v. New, 2008 WL 5044554, *2 (D. Colo. Sept. 2, 2008) (inmate's speculation that he *may* suffer acts of retaliation, including a transfer, without more, does not establish irreparable harm for purposes of imposing injunctive relief). "[A] plaintiff satisfies the irreparable harm requirement by demonstrating 'a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages. . . . **Purely speculative harm will not suffice** . . . ." RoDa Drilling Co v. Siegal, 552 F.3d 1203, 1210 (10th Cir. 2009) (emphasis added). See Greater Yellowstone Coal. v. Flowers, 321 F.3d 1250, 1258 (10th Cir. 2003) (agreeing with the proposition that "purely speculative harm does not amount to irreparable injury" and holding "that a plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative"); Maximus, Inc. v. Thompson, 78 F.Supp.2d 1182, 1189 (D. Kan. 1999) ("Speculation or unsubstantiated fears of what may happen in the future cannot provide the basis for a preliminary injunction.").

Furthermore, plaintiff's allegations of past acts of retaliation are general and conclusory. In addition, he has not made any showing that defendants were involved with the confiscation of his papers by a non-party or that such confiscation, done almost five months after this case was commenced, was in retaliation for bringing this lawsuit. Plaintiff has also made no showing of any defendants' involvement in the alleged assaults by a John Doe and by an unnamed prisoner. Also, he has made no showing of

specific facts that his transfer on an unspecified date was in retaliation for filing this lawsuit.  "Obviously, an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity.  Accordingly, a plaintiff 'must prove that "but for" the retaliatory motive, the incidents to which he refers . . . would not have taken place.' . . . An inmate claiming retaliation must 'allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights.'"  Peterson v. Shanks, 149 F.3d at 1144.  Plaintiff here has not alleged such facts and has not shown that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the plaintiff's Emergency Motion for Protection from Defendants (Docket No. 43) be **denied**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir.**

10

**1996).**

Date: August 7, 2009                        s/ Michael J. Watanabe
      Denver, Colorado                        Michael J. Watanabe
                                                                 United States Magistrate Judge