IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-02821-WYD-MJW

ROBERT R. ROGERS,

    Plaintiff,

v.

TANIA GARCIA, individually and as the Drug and Alcohol Therapeutic Community Coordinator at the Colorado Department of Corrections;
ART DUCHARME, individually and as a contract drug and alcohol therapist with the Colorado Department of Corrections; and
DANA M. BUSTOS, individually and as the Director of Alcohol and Drug Services at the Colorado Department of Corrections.

    Defendants.

---

**ORDER**

---

I.     <u>INTRODUCTION</u>

THIS MATTER is before the Court on Defendants' Motion for Judgment on the Pleadings (ECF No. 144). Defendants move to dismiss Plaintiff's First Amendment retaliation claims (the first two claims) and due process claims (the third and fourth claims) based on failure to state a claim for relief and qualified immunity grounds. The motion is fully briefed.

II.     <u>FACTUAL BACKGROUND</u>

According to the Second Amended Complaint, Plaintiff is an inmate presently in the custody of the Defendant Colorado Department of Corrections ("DOC"). The Complaint alleges that in September 2007, while incarcerated at a minimum security DOC facility, "Rogers inadvertently witnessed a sexual act ("Sex Act") between an

inmate and a female DOC employee who served as a therapist for the prison's drug and alcohol treatment program ("TC Program")." (Second Am. Comp., Introduction). "Rogers reported the Sex Act to two other DOC officials who worked for the TC Program, Defendants Tania Garcia ("Garcia") and Art Ducharme ("Ducharme")." (*Id.*) "Garcia and Ducharme directed Rogers not to further report or otherwise discuss the Sex Act and forced Rogers to enter the TC Program in order to retain control over Rogers and ensure his nondisclosure of the Sex Act." (*Id.*)

After entering the TC Program, Plaintiff alleges that he was the subject of threats and acts of retaliation by Garcia and Ducharme, and later, other DOC staff members. "Fearing that Rogers would report the Sex Act and subsequent intimidation upon his release from prison, Garcia terminated Rogers from the TC Program which (A) caused Rogers to be ineligible for placement in a community corrections program; (B) negatively affected his opportunities for parole, and (C) limited his ability to accrue earned time." (*Id.*) It also prompted his transfer to the Arkansas Valley Correctional Facility ("AVCF"), a higher security facility. At AVCF Plaintiff alleges that he has been subjected to threats and physical violence by DOC staff and inmates that cause him to continue to fear for his physical safety. (*Id.*) In addition, Plaintiff alleges that a DOC official has threatened him with criminal charges if he does not abandon this lawsuit.

III.  ANALYSIS

  A.  Standard of Review

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is treated as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Atlantic Richfield Co. v.*

*Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). "'The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'" *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotations omitted). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

Defendants, however, attach extrinsic evidence to the motion. Thus, I must consider whether to convert the motion to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d). The Tenth Circuit has stated that "if matters outside the pleading are presented to and not excluded by the court, [a Rule 12(b)(6) motion] shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." *David v. City & County of Denver,* 101 F.3d 1344, 1352 (10th Cir.

1996). However, a court may review documents referred to in a complaint if the document are central to the plaintiff's claim and the parties do not dispute the authenticity of the documents. *Jacobson v. Deseret Book Co.*, 287 F.3d 936, 941 n. 2 (10th Cir. 2002); see also *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999). Defendants rely on this exception to assert that conversion of the motion is not required.

I find that while the TC contract is referred to in the complaint, it is not central to the Plaintiff's claim. It is not a dispositive document upon which the Plaintiff seeks relief. *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997). Further, Defendants have not shown how it is central to or essential in any way to Plaintiff's First Amendment or due process claims, and the Second Amended Complaint's passing references to this document do not, in my opinion, make it central to Plaintiff's claims. The other documents attached to the motion to dismiss were not even referenced in the Complaint and thus cannot meet the requirement that they are central to Plaintiff's claims. Accordingly, I find that the exception relied on by Defendants does not apply.

Courts have broad discretion in determining whether or not to accept materials beyond the pleadings. *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998). I exercise my discretion not to consider the extrinsic evidence attached to the motion as I find that the evidence is not useful to my analysis of whether judgment is appropriate on the pleadings. Accordingly, I consider the motion under the standards of Rule 12(b)(6), and conversion to a motion for summary judgment motion is not required.

B.  Whether Plaintiff Has Stated Viable Claims for Relief

1.  The First Amendment Claims

Defendants argue that Plaintiff, a prisoner, does not have a First Amendment right to speak out on matters of public policy or to report a crime.  Therefore any claimed retaliation because of Plaintiff engaging – or attempting to engage – in such conduct is not actionable under § 1983.  Defendants also argue, among other things, that they are entitled to qualified immunity because such constitutional rights were not clearly established.

I find that the motion to dismiss should be denied as to the argument that the First Amendment claims (the First and Second Claims) are subject to dismissal on the basis of qualified immunity.  The court previously applied a "two-step process" to determine whether a defendant was entitled to qualified immunity.  *Saucier v. Katz*, 533 U.S. 194, 199 (2001); *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2008).  This entailed a determination of whether the plaintiff "'asserted a violation of a constitutional right at all'" and second, "whether 'that right was clearly established such that a person in the defendant's position would have known that his conduct violated that right.'" *Graves*, 450 F.3d at 1218 (quotations omitted).

In 2009, the Supreme Court held that courts no longer must decide qualified immunity based upon the sequence required by *Saucier* and followed in cases like *Graves*.  *Pierson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 812 (2009).  *Pierson* stated "that the *Saucier* procedure should not be regarded as an inflexible requirement and that [defendants may be] entitled to qualified immunity on the ground that it was not

clearly established at the time of the search that their conduct was unconstitutional." *Id.* As the Supreme Court noted, "there will be cases in which a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all." *Id.* at 820. Thus, courts now "have the discretion to decide whether [the Saucier two-step sequence] is worthwhile in particular cases." *Id.* at 821.

I now turn to the First Amendment. Plaintiff argues that his First Amendment claims include a retaliation claim and a "chilling" claim. A First Amendment retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct under the First Amendment; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). A First Amendment "chilling" claim also entails three elements: (1) the plaintiff has a right protected by the First Amendment; (2) the defendant's actions were motivated by or substantially caused by the plaintiff's exercise of that right; and (3) the defendant's actions effectively chilled the plaintiff's exercise of his rights. *Bordes v. Payant*, No. 09-1249-pr, 2010 WL 1635714, at *1 (2d Cir. April 22, 2010) (citing *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998)).

As noted by the Tenth Circuit in a First Amendment case brought by an inmate, "'[r]etaliation, though it is not expressly referred to in the Constitution, is nonetheless

actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights.'" *Zarska v. Higgins*, No. 05-3204, 2006 WL 689449, at * 3 (10th Cir. March 20, 2006) (quoting *Poole v. County of Otero*, 271 F.3d 955, 960 (10th Cir. 2001)). Thus, "government action which chills constitutionally protected speech or expression contravenes the First Amendment." *Wolford v. Lasater*, 78 F.3d 484, 488 (10th Cir. 1996).

Further, "a retaliation claim may assert an injury no more tangible than a chilling effect." *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001). "Speech can be chilled even when not completely silenced." *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005). "Because 'it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity,' the plaintiff "does not have to demonstrate that his speech was 'actually inhibited or suppressed.'" *Id*. (quotation omitted). The proper inquiry is "'whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Id*.

The First Amendment claims in this case allege that "Rogers is entitled to certain rights under the First and Fourteenth Amendments to the U.S. Constitution, including the right to speak on a matter of public concern, to report a crime, and to petition the court for redress of grievances." (Second Am. Compl., ¶ 104.) It is alleged as to Defendants Garcia and Ducharme that acting under color of state law, they violated Plaintiff's "constitutional rights to speak, to report a crime, and to petition the court for redress of grievances, including but not limited to retaliating against Rogers for reporting

the Sex Act, and for filing this lawsuit." (*Id.*, ¶ 107.) It is alleged as to Defendant Bustos that upon information and belief he knew or should have known that "Rogers claimed that Garcia and Ducharme ordered him to remain silent about the [Sex Act] incident or be subjected to retaliation"; "Garcia improperly terminated Rogers from the TC Program", and "Rogers was the subject of threats and physical violence by inmates and DOC employees in retaliation against the exercise of his clearly established constitutional right to speak, to report a crime, and to petition this Court for redress". (*Id.*, ¶¶ 113-115.) "Bustos did not report the misconduct by Defendants Garcia and Ducharme, attempt to reinstate Rogers into the TC Program, or attempt to protect Rogers against threats or retaliation" and "[b]y failing to report the misconduct of Defendants Garcia and Ducharme or take other action to protect Rogers from threats and retaliation, Defendant Bustos acquiesced and participated in the violation of Rogers' constitutional rights." (*Id.*, ¶¶ 116-117.)

I must determine whether these allegations state a First Amendment violation. Construing Plaintiff's complaint liberally and accepting all of his allegations as true, I find that the allegations do state a plausible First Amendment claim.[1] First, Plaintiff alleges that Defendants retaliated against him for speaking out against sexual misconduct by prison staff with inmates and filing this lawsuit. This states a First Amendment violation and I find that the law is clearly established on this issue. It is "clearly established" that "the First Amendment bars retaliation for protected speech." *Crawford-El v. Britton*,

---

[1] I am disappointed with the parties' briefing on this issue as they did not cite to many of the applicable cases which I found through my research. Counsel is advised in the future to be more thorough in his or her research.

–8–

523 U.S. 574, 592 (1998). It is also clearly established under the First Amendment that inmates have the right to access to courts, including the right to file grievances, and that prison officials cannot retaliate against an inmate because of the inmate's exercise of those rights. *See Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992); *Frazier v. Dubois*, 922 F.2d 560, 562 (10th Cir. 1990); *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). "This principle applies even where the action taken in retaliation would be otherwise permissible." *Smith*, 899 F.2d at 948.

As to Defendants' argument that the right to report a crime or other misconduct is not clearly established, I disagree. It is clearly established that an attempt to report an alleged criminal offense is conduct protected by the First Amendment. *See Meyer v. Bd. of County Comm'rs*, 482 F.3d 1232, 1243 (10th Cir. 2007). Since that right was held to apply to a detainee in a mental health facility, I infer from *Meyer* that this right would also extend to an inmate. *Id.* Similarly, the Tenth Circuit held in *Meyer* that denying the ability to report physical assaults is an infringement of protected speech. *Id.* I find that this would encompass the denial of the right to report the type of sexual misconduct at issue in this case and/or retaliation after the misconduct is reported.

Finally, I find that it is clearly established that prison officials cannot retaliate against a person to prevent them from exercising their right to file grievances or lawsuits, *i.e.,* that the prison officials are chilling the inmate's First Amendment rights. For example, in *Zarska*, the Tenth Circuit found that a correctional officer's alleged filing of disciplinary proceedings to retaliate for an inmate's report of misconduct in an affidavit that was given to another inmate to support his grievance would chill a person

of ordinary firmness from continuing to engage in that activity. *Zarska*, 2006 WL 689449, at * 3. *Zarska* further noted that "[c]onsidering the level of control that prison officials have over inmates' lives, retaliation is not to be taken lightly." *Id.* Similarly, in *Fogle v. Pierson*, 435 F.3d 1252, 1263 (10th Cir. 2006), the Tenth Circuit found a possible First Amendment retaliation claim where after the inmate complained about his placement in administrative segregation and threatened to file a suit, he received threats to be transferred to long-term administrative segregation.[2]

Cases from other circuits also support my finding. For example, in *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009), the court found that an inmate's speech in an affidavit he filed in a lawsuit about an incident where prison officials are alleged to have mistreated another inmate who was gravely ill was protected speech under the First Amendment and survived a motion to dismiss. *Id.* at 551-552. It noted that "Prisons have an interest in keeping the inmates as safe and secure as possible while imprisoned, and truthful speech that describes possible abuses can actually be quite consistent with that objective." *Id.* at 551. Similarly, in *Cohen v. Summervold*, 276 Fed. Appx. 642, 643 (9th Cir. 2008), the court found that an inmate's complaint that his First Amendment rights were chilled because he feared that if he submitted grievances, he

---

[2] *See also Purkey v. Green*, 28 Fed. Appx. 736, 746 (10th Cir. 2001) (inmate stated a cause of action for First Amendment retaliation when he alleged that he was retaliated against for attempting to file suit against jail employees); *Bledsoe v. Stotts*, No. 93-3231, 1993 WL 451366, at * 1 (10th Cir. Nov. 5, 1993) (plaintiff stated a possible claim when he alleged that he was transferred from one prison to another to interfere with his right to access the courts or in retaliation for exercising his First Amendment rights); *Cooper v. Ellsworth Correctional Work Facility*, No. 93-3102, 1993 WL 308095, at *2 (10th Cir. Aug. 11, 1993) (assuming without deciding that plaintiff's claim that his transfer to another prison facility violated his First Amendment rights because it was in retaliation for his threats to sue but finding that the complaint failed to allege that prison officials were actually motivated by plaintiff's threat to sue).

would be served with a notice of charges, liberally construed and taken as true, stated a claim for retaliation.[3]

As to the merits of the First Amendment claims, Defendants argue that Plaintiff did not plead a cognizable injury or facts concerning causation, *i.e.*, that any adverse actions or threats of adverse action were motivated, at least in part, by Plaintiff's protected conduct. Again, I disagree. At this stage of the litigation, I find that it can be inferred from Plaintiff's complaint that after Plaintiff reported the Sex Act to DOC officials, he was directed not to further report or discuss this act and he was forced to enter the TC program in order to retain control over him and ensure his nondisclosure of the Sex Act. After entering the program, he alleges he was the subject of threats, physical violence and other acts of retaliation and that he suffered injury, including his transfer to a higher security prison. He also alleges that he was threatened with criminal prosecution for filing this lawsuit. I find that these facts, assumed to be true for purposes of this motion, establish both a causal connection and injury.

In making these findings, however, I am in no way determining the ultimate merits of Plaintiff's First Amendment claims. This is something that needs to be fleshed out during discovery and in summary judgment or at trial. As the Seventh Circuit noted,

---

[3] *See also Pearson v. Welborn*, 471 F.3d 732, 740-42 (7th Cir. 2006) (inmates's oral complaints about J-pod and conditions therein and threats by guards that he would never get out of that prison if he filed a lawsuit were protected under the First Amendment); *Rhodes*, 408 F.3d at 563 n. 1, 567-68 ("any retribution visited upon a prisoner due to his decision to engage in protected conduct is sufficient to ground a claim of unlawful First Amendment retaliation-whether such detriment "chills" the plaintiff's exercise of his rights or not");); *Gomez*, 255 F.3d at 1123 (inmate, a law clerk at prison library, stated a First Amendment claim in connection with his oral concerns to officer about the management of the law library and subsequent threats to transfer him which caused him to quit the job); *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (officers' false charges infringed First Amendment right to file prison grievances: "the injury asserted is the retaliatory accusation's chilling effect on Hines' First Amendment rights").

whether a plaintiff's allegations are in fact true or whether the alleged harassment would actually deter a person of ordinary firmness are not questions that we address at the pleading stage. *Bridges*, 557 F.3d at 552. Accordingly, Defendants' Motion for Judgment on the Pleadings is denied as to the First Amendment claims.

    2.    <u>Due Process Claims</u>

Defendants assert that Plaintiff's Due Process claims (the Third and Fourth claims) must be dismissed based on the doctrine of qualified immunity. Plaintiff alleges a "constitutionally protected liberty interest in maintaining a record of compliance with DOC recommended programs." (Second Am. Compl., ¶¶ 122 & 138.) He further alleges that his termination from the TC Program resulted in a mark of noncompliance being placed on his record. (*Id.* ¶¶ 127, 143). As a result, he alleges he was not eligible for placement in community corrections, was transferred to a Level III security facility, was denied parole prior to his mandatory release date, and suffered a reduction in earned time accrued each month. (*Id.*, ¶¶ 128, 144.) Plaintiff also argues that he was not provided due process in connection with his termination from the TC Program. (*Id.*, ¶¶ 130-134, 146-150.) Specifically, he alleges he "was not provided notice of the basis for the decision to terminate him from the TC Program which occurred on or about May 21, 2008, an opportunity to contest the allegations made against him, or review of the decision by an impartial decision maker." (*Id.*)

Defendants first argue that Plaintiff has no protected liberty interest in maintaining a record of compliance with DOC programs and/or that the law is not clearly established concerning this due process right, entitling Defendants to qualified immunity. "'To be

-12-

clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996) (quotation omitted). Ordinarily, "'there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Id. (quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

I agree with Defendants that they are entitled to qualified immunity in connection with this due process claim. Plaintiff has not shown that he has a protected liberty interest in connection with maintaining a record of compliance with DOC recommended programs and has also not shown that the law is clearly established concerning his claimed due process rights in this regard. In that regard, Plaintiff has not cited to any Supreme Court or Tenth Circuit decision on point, or indeed any other authority which supports this claim.

As to the due process claims regarding the termination from the TC Program and the fact that Plaintiff was denied procedural due process in connection with same, Plaintiff has cited *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) and *Beebe v. Heil*, 333 F. Supp. 2d 1011, 1018 (D. Colo. 2004). *Smith*, however, relates to prison disciplinary proceedings, not to treatment in a drug program. While *Beebe* is more analogous to the case at hand, involving termination from a sex offender treatment program, a case from the district court is insufficient to show that the law is clearly established. Accordingly, I find that even if there was a constitutional violation in connection with Plaintiff's termination from the TC Program, which I do not find Plaintiff

has shown, Defendants are entitled to qualified immunity as there has been no showing that the law was clearly established that Plaintiff had due process rights in connection with his termination from that program.

Since I have found that Defendants are entitled to qualified immunity on both portions of the due process claims, Defendants' Motion for Judgment on the Pleadings must be granted as to these claims.

III. CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendants' Motion for Judgment on the Pleadings (ECF No. 144) is **GRANTED IN PART AND DENIED IN PART**. Specifically, it is **GRANTED** as to the Due Process Claims (the Third and Fourth claims) and **DENIED** as to the First Amendment claims (the First and Second claims). The Clerk of Court shall enter judgment in favor of Defendants and against Plaintiff on the Third and Fourth claims only.

Dated: September 3, 2010

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge